IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNIVABS SOLUTIONS PRIVATE LIMITED,<br><br>        Petitioner,<br><br>v.<br><br>THE RADIOLOGY GROUP, LLC,<br><br>        Respondent. | Civil Action No.<br>1:25-cv-03932-VMC |

## ORDER

This is a petition to confirm arbitration award and cross-petition to vacate arbitration award under 9 U.S.C. § 203 and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), also known as the New York Convention. *See Commodities & Mins. Enter., Ltd. v. CVG Ferrominera Orinoco C.A.*, 111 F.4th 1294, 1297 (11th Cir. 2024). For the reasons that follow, the Court grants the petition to confirm and denies the petition to vacate.

### Background

Petitioner and Respondent entered into a Radiology [Outsourced] Services Agreement on January 31, 2022. ("Agreement," Doc. 1-1 at 1).[1] Under the Agreement, Petitioner contracted to provide radiology services to Respondent and

---

[1] Citations to documents in the record are to internal pagination and not the ECF header stamps unless indicated otherwise.

Respondent contracted to pay for services rendered according to the fee schedule in the Agreement. (Doc. 1 ¶ 5). The Agreement contained a provision regarding disputes which provided for arbitration to take place in Georgia under Georgia law:

> 7.6 GOVERNING LAW. This Agreement and the construction and interpretation thereof shall be[ ]governed by the laws of the State of Georgia, U.S.A. This Agreement is made in Georgia and shall be governed and construed according to the laws of Georgia without regard to its conflicts of laws principles. All disputes, controversies or claims which relate in any way to this Agreement will be resolved by arbitration in Atlanta Georgia, by a single arbitrator appointed jointly in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitrator shall be knowledgeable in the area of information technology consulting. The arbitrator's award shall be final and binding, and judgment on the award may be entered in any court of competent jurisdiction but may only include damages consistent with the limitations in this Agreement.

(Doc. 1-1 at 8). On March 9, 2023, Petitioner filed a Demand for Arbitration with the American Arbitration Association ("AAA"). (Doc. 1-2). Respondent filed a counterclaim arguing that

> Claimant owes Respondent in excess of $2,000,000 for overpayment of services at rates incurred under false pretenses in conflicting interest transactions that may be set aside and damages awarded under applicable law. These parties have been doing business with each other since 2013, with Claimant providing radiology services to Respondent. At that time, Vikas Verma was a Manager of Respondent and also a director and officer of

> Claimant. Mr. Verma determined the pricing on behalf of both parties — that is, on the one hand on behalf of Claimant as a director and officer, and on the other hand, on behalf of Respondent in his fiduciary capacity as Manager — all to the significant detriment of Respondent. Unbeknownst to Respondent until recently, Claimant was in fact charging Respondent an unfair greater than 100% mark-up over its internal cost — translating to a $2,000,000 overpayment.

(Doc. 1-9 at 4). On May 23, 2025, the AAA's Arbitrator issued a Final Award ("Award") providing that Petitioner recover $620,840.57 for breach of contract, $94,422.00 in pre-award interest, and post judgment interest, and further providing that Respondent recover nothing on its counterclaims. (*Id.* at 32–34). These proceedings followed.

## Legal Standard

Section 208 of Title 9 of the U.S. Code incorporates the Federal Arbitration Act to actions and proceedings under the Convention. Moreover, under the Eleventh Circuit's ruling in *Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.*, 66 F.4th 876, 890 (11th Cir. 2023), "in a New York Convention case where the arbitration is seated in the United States, or where United States law governs the conduct of the arbitration, Chapter 1 of the FAA provides the grounds for vacatur of an arbitral award." As discussed below, the Agreement provided for arbitration seated in the United States and for application of Georgia law, and so the United

States is the primary jurisdiction under the Convention and the FAA applies. *Id.* at 880.

"A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the [Federal] Arbitration Act." *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir. 1989) (quoting *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986)). Under the Act, an award may be vacated for the following reasons:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. In contrast, an award may be modified for the following reasons:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

4

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties. 9 U.S.C. § 11.

"Under the FAA, federal courts have limited authority to vacate or modify an arbitration award." *Gherardi v. Citigroup Glob. Mkts. Inc.*, 975 F.3d 1232, 1236 (11th Cir. 2020). "Vacatur is allowed 'only in very unusual circumstances,' and only in the circumstances enumerated in the statute." *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). As the Eleventh Circuit noted in *Gherardi*:

> Judicial review of arbitration decisions is "among the narrowest known to the law." *Bamberger Rosenheim, Ltd. v. OA Dev., Inc.*, 862 F.3d 1284, 1286 (11th Cir. 2017) (quoting *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007)). Arbitrators do not exceed their powers when they make errors, even "a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). That means, however difficult it may be, "we must defer entirely to the arbitrator's interpretation of the underlying contract no matter how wrong we think that interpretation is." *Wiregrass*, 837 F.3d at 1087; see also *Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1303 (11th Cir. 2019). In fact, under our current scheme, an arbitrator's actual reasoning is of such little importance to our review that it need not be explained—

5

the decision itself is enough. *See O.R. Sec., Inc. v. Prof'l Planning Assocs.*, Inc., 857 F.2d 742, 747 (11th Cir. 1988).

975 F.3d at 1237.

## Discussion

As an initial matter, Respondent argues that the Georgia Arbitration Act, O.C.G.A. § 9-9-1 *et seq.*, applies to this confirmation/vacatur proceeding. (Doc. 6-3 at 17). If the above Legal Standard section did not give it away, the Court finds the FAA, not the Georgia Arbitration Act, applies to this case. This narrows Respondent's grounds for vacatur to two, which the Court addresses later in this Order.

## I.    Respondent's Non-FAA Arguments

The FAA, not the Georgia Arbitration Act, governs this case which eliminates several of Respondent's arguments for vacatur. This is so for at least three reasons. First, the Agreement and Award fall under the Convention. "An arbitration agreement or arbitral award" between a citizen of the United States and a non-citizen of the United States, "arising out of a legal relationship, whether contractual or not, which is considered as commercial . . . falls under the Convention." 9 U.S.C. § 202. Chapter 2 of Title 9 of the U.S. Code governs confirmation of awards under the Convention: "[A]fter an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction **under this chapter** for an order confirming the award as

6

against any other party to the arbitration." 9 U.S.C. § 207 (emphasis added). And, as the Court noted above, Chapter 2 of Title 9 applies the FAA to confirmation proceedings.

Second, courts around the country have held that recognizing a foreign arbitration award under the Convention is a matter of federal, not state law. *See e.g.*, *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 582 (2d Cir. 1993); *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 143 F.4th 496, 502 (D.C. Cir. 2025). But as noted above, domestic arbitration awards involving a foreign party fall under the Convention as well.

Third, the Eleventh Circuit has noted that a mere reference to Georgia law does not incorporate the Georgia Arbitration Code. *Gulfstream Aerospace Corp. v. Oceltip Aviation 1 Pty Ltd.*, 31 F.4th 1323, 1329 (11th Cir. 2022) ("Given that the parties specified arbitration rules—and those rules weren't the Georgia Arbitration Code—it makes little sense that the parties would have intended and expected that the Georgia Arbitration Code nonetheless would govern review of any award resulting from arbitration."). For all these reasons, the FAA governs.

This disposes of a number of Respondent's arguments, because while "arbitrators' 'manifest disregard of the law'" supplies a basis for vacating the Award under O.C.G.A. § 9-9-13(b)(5), "federal law—the New York Convention

and its implementing statute (Chapter 2 of the FAA) . . . do not include 'manifest disregard of the law'" as a basis to vacate an award. *Gulfstream Aerospace*, 31 F.4th at 1328 (citing *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 848 (6th Cir. 1996)). (*But see* Doc. 6-3 at 19–22). Moreover, the Eleventh Circuit has held that the New York Convention's grounds for refusing to recognize enforcement of an arbitral award do not apply to vacatur proceedings such as this one where the Court has "primary jurisdiction." *Corporacion AIC*, 66 F.4th at 886. This precludes any "public policy" basis for vacatur. *Id.* at 885. (*But see* Doc. 6-3 at 19). The Court thus only considers Respondent's FAA arguments for vacatur.

## II.    Whether the Arbitrator Exceeded His Powers

The first of Respondent's remaining two arguments is that the arbitrator exceeded his power under 9 U.S.C. § 10(a)(4). Respondent argues that the arbitrator exceeded his power by essentially refusing to follow the parties' agreement, pointing to the following provision regarding certain managers with non-exclusive duties to the Respondent:

> 5.13 Managers Have No Exclusive Duty to Company. Except for Anand Lalaji and Robb Kolb, each of whose exclusive duty shall be with the Company, a Manager shall not be required to manage the Company as the Manager's sole and exclusive function and any Manager may have other business interests and may engage in other activities in addition to those relating to the Company. Neither the Company nor any Member shall have any right, by virtue of this Operating Agreement, to share or participate in such other investments or

8

> activities of the Manager or to the income or proceeds
> derived therefrom. The Manager shall incur no liability
> to the Company or to any of the Members as a result of
> engaging in any other business or ventures.

(Doc. 6-3 at 3–4). The Arbitrator interpreted this provision to find that Vikas Verma

did not breach any duty to Respondent:

> The Tribunal accordingly finds that it is the
> preponderance of the evidence in this arbitration that the
> exclusive Manager duties to Respondent are stated in
> this Operating Agreement provision expressly, clearly
> and unambiguously to be reserved <u>exclusively</u> to
> Managers Anand Lalaji and Robert Kolb; that Manager
> Vikas Verma's duties as Manager are clearly and
> unambiguously <u>excluded</u> from that relationship of
> managerial exclusive duty to Respondent; that this
> Respondent Operating Agreement provision thereby
> eliminates in respect of Manager Vikas Verma the
> existence of any fiduciary duties and liabilities to
> Respondent, specifically the embodied duty of loyalty
> and the avoidance of conflicting interests arising out of
> any of Vikas Verma's business interests in respect of
> Claimant Univabs and arising out of any of his activities
> related to those business interests of Claimant Univabs;
> and that this Operating Agreement provision further
> clearly and unambiguously provides in substance that
> Manager Vikas Verma "*shall incur no liability to the
> Company [Respondent] or to any of the Members as a result of
> engaging in any*" such business interests and activities in
> respect of Claimant Univabs. Ex. J-1, §5.13. (Emphasis
> supplied).

(Doc. 1-9 at 21). Respondents argue that the arbitrator rewrote the agreement by

reading "no exclusive duty" as "no duty." (Doc. 6-3 at 3–4).

Arbitrators do not exceed their powers when they make errors, even "a serious error." *Stolt-Nielsen*, 559 U.S. at 671. The "sole question" is "whether the arbitrator (even arguably) interpreted the parties' contract [including the Rules the parties contracted to apply], not whether she got [their] meaning right or wrong." *Gherardi*, 975 F.3d at 1238 (quoting *Wiregrass Metal Trades Council AFL-CIO v. Shaw Env't & Infrastructure, Inc.*, 837 F.3d 1083, 1088 (11th Cir. 2016)). "Vacatur under § 10(a)(4) 'is permitted only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice.'" *Peebles v. Terminix Int'l Co., LP*, No. 20-14365, 2021 WL 5894857, at *2 (11th Cir. Dec. 14, 2021) (quoting *Gherardi*, 975 F.3d at 1237).

Respondent relies heavily on the Eleventh Circuit's decision in *Wiregrass Metal Trades Council AFL-CIO v. Shaw Environmental & Infrastructure, Inc.*, 837 F.3d 1083, 1087–88 (11th Cir. 2016), which explained the difference between an arbitrator "interpreting" and "ignoring" the language of a contract. That case involved a collective bargaining agreement prohibiting employees from "[p]ossessing . . . Government property without proper authority." *Id.* at 1086. After the employer was compelled to arbitrate a dispute over the employer's application of the policy, the arbitrator found the employee whose conduct was at issue did not violate the policy "because he did not know that the property he possessed was government-owned." *Id.* The employer moved to vacate the award,

arguing "that the arbitrator had modified the agreement by adding a *mens rea* or knowledge requirement to the possession policy, essentially changing 'possessing government property' to "'knowingly possessing government property.'" *Id.* at 1087. The district court agreed, and the employee's union appealed.

On appeal, the Eleventh Circuit laid down the two principles guiding its analysis: First, that courts "must defer entirely to the arbitrator's interpretation of the underlying contract no matter how wrong [they] think that interpretation is." *Id.* And second, that "an arbitrator 'may not ignore the plain language of the contract.'" *Id.* at 1088 (quoting *Warrior & Gulf Nav. Co. v. United Steelworkers of Am., AFL–CIO–CLC*, 996 F.2d 279, 281 (11th Cir. 1993)). As the Eleventh Circuit explained: "Those two principles define the scope of the arbitrator's authority. The arbitrator acts within her authority when she even arguably interprets a contract, and she exceeds her authority when she modifies the contract's clear and unambiguous terms." *Id.* The starting point for the analysis is "looking at the relevant language . . . and asking, as a threshold matter, whether that language is open to interpretation." *Id.* Next, if the court determines the policy "is at least open to interpretation, the next question is whether the arbitrator did interpret it." *Id.* at 1090.

The court found that the contract's silence on *mens rea* allowed for interpretation, contrasting it with the contract's clarity on the consequence for a

violation (termination). *Id.* at 1088–89. To determine whether the arbitrator actually interpreted the contract, the Eleventh Circuit listed certain watermarks of interpretation, which the arbitrator did not engage in:

> She did not characterize her task as one of interpretation. She did not describe the plain meaning of the terms in the policy. She did not invoke canons of construction. She did not look to extrinsic aids to find the parties' intent. She did not explicitly do any of the things that we ordinarily associate with an interpretive effort.

*Id.* at 1091. But ultimately, the appeals court reversed the district court anyway, relying on a presumption of enforcing arbitration awards. *Id.* at 1092–93.

Here, the Agreement does not clearly delineate the scope of the duties of non-exclusive managers, meaning it is a matter of interpretation. Moreover, there are many examples of "hallmarks" that the arbitrator was engaging in interpretation. The arbitrator noted that he was "required by the law of Georgia and Georgia's public policy to give 'maximum effect'" to the freedom of contract. (Doc. 1-9 at 19). He also sought to give effect to the intent of the parties, noting that by

> excepting its Manager Vikas Verma from any and all legal duties and liabilities, including fiduciary ones, to Respondent, and that they did so in order to legally enable Vikas Verma to effectively control Respondent's business relationship without any managerial liability for conflicts of interest with the naturally conflicted foreign entity Univabs and to thereby enable Respondent to successfully achieve its above-stated overriding objective which it saw as being in its own best interests.

12

(*Id.* at 21–22). *See* O.C.G.A. § 13-2-3 ("The cardinal rule of construction is to ascertain the intention of the parties."). Accordingly, the Court finds that the Agreement was subject to interpretation and that the arbitrator actually interpreted it.

Lastly, the arbitrator did not modify any express term of the Agreement because nothing in the Agreement imposed an explicit duty that was allegedly violated. Respondent argues that "[a]s majority owner, a director, and an officer of Univabs, Verma had knowledge of and access to material information of Univabs regarding the costs of delivering services to TRG that he was duty bound to disclose to TRG and its other Manager – Anand Lalaji." (Doc. 6-3 at 2). And Respondent points to Section 5.9 of the Agreement that provides a Manager can be held liable for harm caused by "(a) Intentional misconduct, (b) knowing violation of law, or (c) a transaction from which such Manager received an improper personal benefit in violation or breach of the provisions of this Operating Agreement or the Georgia Act." (*Id.* at 4). This provision, however, does not literally impose any affirmative disclosure obligation. Instead, it refers generally to violating Georgia law and the Agreement. But as noted above, the Agreement itself also provides that "[t]he Manager shall incur no liability to the Company or to any of the Members as a result of engaging in any other business or ventures." Absent a more specific contractual provision specifying a duty to disclose, the

Court cannot say the arbitrator "modified" the agreement by attempting to harmonize those two provisions.

## III.    Whether the Arbitrator Engaged in Procedural Misconduct

Respondent's last remaining ground for vacatur is that the arbitrator engaged in procedural misconduct causing prejudice under 9 U.S.C. § 10(a)(3). While the FAA permits the Court to vacate an award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced," 9 U.S.C. § 10(a)(3), "[t]o establish misconduct, the party moving for vacatur must show that there was no reasonable basis for the arbitrator's [action]." *CM S. E. Texas Houston, LLC v. CareMinders Home Care, Inc.*, 662 F. App'x 701, 704 (11th Cir. 2016) (citing 9 U.S.C. § 10(a)(3); *Johnson v. Directory Assistants, Inc.*, 797 F.3d 1294, 1301 (11th Cir. 2015)). The Court "may vacate an award on these grounds only if the arbitrator's choice 'prejudice[d] the rights of the parties and denie[d] them a fair hearing.'" *Id.* (quoting *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir. 1992), *disapproved on other grounds by First Options*, 514 U.S. at 938).

Respondent essentially argues that the arbitrator failed to ensure that Petitioner complied with its discovery obligations. (Doc. 6-3 at 24). Respondent's objection is on shaky grounds to begin with because there is no right in arbitration

14

to the same discovery procedures enjoyed in federal courts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) ("Although [the] procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). But moreover, while Respondent argues the prejudice it suffered was "self-evident," (Doc. 6-3 at 24), it points to no specific prejudice it suffered based on its alleged failure to be permitted to present or examine witnesses. *See id.* ("Prejudice might occur when, for example, the arbitrator's choice not to postpone a hearing entirely prevents a party from presenting a key witness' material, noncumulative testimony.") (citing *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20–21 (2d Cir. 1997)). This is no basis to vacate the Award.

## Conclusion

Having rejected Respondent's arguments for vacatur, the Court must confirm the award.[2] For the above reasons, it is

---

[2] The award provided for post-award interest at the Georgia rate, but a judgment confirming an arbitration award is to have the same effect, in every respect, as is any other judgment entered by the court, and post-judgment interest is thus governed by federal statutory rates. *Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 739–40 (N.D. Tex. 1997)) ("The court therefore reads the Tribunal's award of interest to apply only to the period between entry of the award and entry of a

ORDERED that the Motion to Vacate (Doc. 6) is **DENIED**. It is

FURTHER ORDERED that the Motion for Oral Argument (Doc. 28) is **DENIED AS MOOT**. It is

FURTHER ORDERED that the Petition to Confirm (Doc. 1) is **GRANTED**. The Clerk is therefore **DIRECTED** to enter a judgment in favor of Petitioner and against Respondent in the amount of $620,840.57, plus $94,422.00 in pre-judgment interest, plus interest on the principal amount of $620,840.57 at the rate provided by O.C.G.A. § 7-2-12 from May 23, 2025 to the date of entry of this Order, and interest on the principal amount of $620,840.57 at the federal judgment rate after that date.

**SO ORDERED** this 12th day of November, 2025.

_____
Victoria Marie Calvert
United States District Judge

---

judgment confirming the award in this court. The court will apply the current federal rate to post-judgment interest.") (citing 9 U.S.C. § 13).